UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY SILVESTRI,

                           Plaintiff,             Case # 18-CV-357-FPG

v.                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

## INTRODUCTION

On March 5, 2013, Plaintiff Mary Silvestri protectively applied for Disability Insurance Benefits under Title II of the Social Security Act ("the Act") and for Supplemental Security Income under Title XVI of the Act. Tr.[1] 303. The Social Security Administration ("SSA") denied her claim and Plaintiff appeared at three hearings before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 36-118. Plaintiff and a vocational expert testified. On September 27, 2016, the ALJ issued an unfavorable decision. Tr. 15-29. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). EFC Nos. 12, 15. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 9.

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

## LEGAL STANDARD

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation:[3] the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g) and § 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

---

[3] The ALJ uses this analysis to determine whether a claimant is disabled and therefore entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920.

## DISCUSSION

### I.       The ALJ's Decision

In conducting the requisite five-step analysis, the ALJ determined that Plaintiff's major depressive disorder, PTSD, bipolar disorder, and substance addiction were severe impairments. Tr. 18. The ALJ concluded that Plaintiff's Morton's neuroma in her left foot was not a severe impairment because the record did not "establish that such condition has more than a minimal impact." Tr. 18. The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but that she must work in a low stress environment. She would be further limited in that she could understand, remember, and carry out simple instructions and tasks, could tolerate minimal changes in work routine, and could have frequent interaction with supervisors and occasional interaction with coworkers. However, she could not have any supervisory duties or retain any independent decision-making authority, and could not have any incidental interaction with the general public. Tr. 20.

In formulating the RFC, the ALJ gave "great weight" to the opinion of State agency consultant G. Butensky because that opinion was detailed, based on a review of the medical record, and was consistent with the substantial medical evidence of record. Tr. 27. The ALJ gave "some weight" to the slightly more restrictive opinion from consultative evaluator Christine Ransom, Ph.D. because Plaintiff's limitations were not as severe as the opinion reflected. Tr. 27. Finally, the ALJ gave "little weight" to the opinion from Plaintiff's treating physician, Dr. Rodes, who indicated that Plaintiff would have a "permanent total disability" because Dr. Rodes provided no findings or explanation in the opinion, it was inconsistent with the examination findings, and it opined on an issue reserved for the SSA. Tr. 27.

Ultimately, the ALJ concluded that there were jobs within the national economy that Plaintiff could perform, thus rendering her not disabled.

Plaintiff takes issue with the ALJ's treatment of the medical opinion evidence. She argues that (1) Dr. Butensky's opinion, issued in 2013, is stale because Plaintiff's condition deteriorated after the opinion was issued and the ALJ should have developed the record to account for such a deterioration; (2) the ALJ failed to incorporate all of Dr. Butensky's limitations into the RFC despite giving his opinion "great weight"; (3) the ALJ improperly rejected Dr. Rodes's opinion that Plaintiff was permanently disabled; (4) the ALJ failed to properly weigh Plaintiff's credibility; and (5) the ALJ failed to assist in obtaining records from Plaintiff's podiatrist regarding her Morton's neuroma. The Court disagrees with these arguments and concludes that the ALJ's decision is supported by substantial evidence.

## II. Analysis

### A. Dr. Butensky's Opinion Does Not Create a Gap Requiring Development of the Record

Dr. Butensky, the State agency examiner, completed his assessment of the medical record on August 14, 2013. He concluded that Plaintiff would be "moderately limited" in ability to: carry out instructions, maintain attention and concentration, work in coordination with others, complete a normal work day, interact appropriately with the general public, respond appropriately to changes in the work setting, and set realistic goals. Tr. 138-39. Plaintiff would not be significantly limited in any other areas. Plaintiff argues that her condition changed drastically in October 2013—after Dr. Butensky's report—rendering his report stale and requiring the ALJ to further develop the record.

"While the mere passage of time does not necessarily render a medical opinion outdated or stale, subsequent surgeries and treatment notes indicating a claimant's condition has deteriorated may." *Moon v. Comm'r of Soc. Sec.*, No. 17-CV01312-MAT, 2019 WL 2240235, at *6 (W.D.N.Y. May 24, 2019) (citing *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7

(W.D.N.Y. June 6, 2014) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition")).

Although Dr. Butensky issued his opinion more than three years before the ALJ issued his decision, the record does not establish that Plaintiff's condition significantly deteriorated during that time. Plaintiff lost her license in October 2013 following an arrest for driving while intoxicated. Tr. 454. But Plaintiff's condition continued to oscillate in this post-arrest period. For example, on April 15, 2015, Plaintiff indicated that her mood was better since starting medication (Tr. 521) but in August she indicated she was more depressed after a period of improvement (Tr. 524). In October 2015, Plaintiff noted an increase in irritability and insomnia and an overwhelming feeling of fatigue (Tr. 530-31), yet nearly two months later she was again feeling less depressed and was no longer experiencing manic symptoms (Tr. 534). On March 1, 2016, Plaintiff was hospitalized for 16 days following a suspected suicide attempt. Tr. 554-55. However, she was hospitalized for a similar apparent suicide attempt in 2012—before Dr. Butesnky's report. Tr. 375-83. Furthermore, Plaintiff denies that either hospitalization was the result of a suicide attempt. Tr. 378-79 (also stating that "[i]t is quite clear that the patient is alcohol dependent and has been suffering for many years from substance induced depression which she has been poorly compliant with."), 555. While the record is clear that Plaintiff was consistently depressed and anxious throughout the pendency of her claim, there is nothing to suggest that her condition deteriorated so precipitously as to render Dr. Butensky's opinion stale.

**B.      The ALJ Properly Incorporated Dr. Butensky's Opinion into the RFC**

Plaintiff next argues that, despite giving it "great weight," the ALJ failed to fully incorporate Dr. Butensky's opinion into the RFC. There is no basis for this argument.

As a general matter, "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting another source), and there is no "absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, Case. No. 14-cv-170, 2015 WL 1524417, *8 (N.D.N.Y. Apr. 2, 2015). Yet, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, *7 (1996)). Accordingly, an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions. *See Younes*, 2015 WL 1524417 at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently").

But the Court is not convinced that the RFC conflicts with Dr. Butensky's opinion in any way or that the ALJ rejected some portions of Dr. Butensky's opinion while he incorporated others. Dr. Butensky opined that Plaintiff would have moderate limitations in some areas of concentration and social interaction. Tr. 138-39. The ALJ accounted for these moderate limitations by restricting Plaintiff to low stress work with the capacity to understand simple instructions only, no production quotas, no independent decision-making, no interaction with the general public, and only occasional interaction with co-workers. Tr. 20. Indeed, the RFC may be *more* limiting than Dr. Butensky's opinion would allow.

### C.     The ALJ Did Not Err by Rejecting Dr. Rodes's Opinion

Plaintiff asserts that the ALJ erred by rejecting her treating physician's opinion that she would be permanently disabled. Again, the Court disagrees.

The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). However, as the Commissioner correctly notes, the ALJ need not accept a determination from a treating physician as to the ultimate issue of whether plaintiff is disabled or not. *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999); *Riley v. Astrue*, No. 10 CIV. 8596 CM DF, 2014 WL 704676, at *1 (S.D.N.Y. Feb. 21, 2014) ("Treating physicians are entitled to deference as to their medical opinions only; they are not entitled to deference when they opine about the ultimate issue in the case (plaintiff's fitness to work)."). "An ALJ is not at liberty to reject such opinions simply because they reach the ultimate issue without analyzing what is behind those opinions or recontacting the physicians to have them translate their opinions into more appropriate terms." *Alvarez Rosario v. Comm'r of Soc. Sec.*, No. 17-CV-140, 2019 WL 1542285, at *4 (W.D.N.Y. Apr. 9, 2019) (noting that "100% disability" was an opinion on the ultimate issue reserved to the Commissioner, but concluding that ALJ did not adequately support decision to accord little weight to treating source opinion).

The ALJ here provided good reasons for rejecting Dr. Rodes's opinion: in addition to reaching the ultimate issue reserved for the Commissioner, the ALJ concluded that Dr. Rodes's opinion was inconsistent with the treatment notes and the medical record. Tr. 27. The ALJ was correct.

The opinion from Plaintiff's treating physician Dr. Rodes consists of one line: "Permanent total disability." Tr. 434. The "opinion" is actually part of a treating note, which, as the ALJ acknowledged "provided no findings or explanation" and does not suggest any specific limitations. Tr. 27. Rather, the note only describes Plaintiff's current psychological state—not her ability to

function. And even the description of Plaintiff's then-current mental health status does not, as the ALJ reasoned, comport with "that extreme degree of disability" noted in the opinion. Tr. 27. That day, Dr. Rodes indicated that Plaintiff's attitude was cooperative, her mood had worsened, her affect was flat, but that she retained normal attention, concentration, judgment, insight, and thought process. Tr. 433. Such an internally inconsistent non-opinion, especially one such as this which reaches the ultimate issue of disability, is, as the ALJ concluded, not entitled to controlling weight.

### D. The ALJ Did Not Improperly Weigh Plaintiff's Testimony

Plaintiff insists that the ALJ improperly evaluated Plaintiff's testimony regarding her activities of daily living and her compensation history. However, "[a] federal court must afford great deference to the ALJ's credibility finding, since 'the ALJ had the opportunity to observe [the claimant's] demeanor while [the claimant was] testifying.'" *Kessler v. Colvin*, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) (quoting *Marquez v. Colvin,* No. 12 Civ. 6819(PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013)). "Accordingly, so long as the credibility determination is supported by substantial evidence, this Court may not disrupt the ALJ's findings." *Id.*

The ALJ's analysis of Plaintiff's credibility was supported by substantial evidence. Plaintiff reported an ability to engage in a wide range of activities of daily living, such as managing money, driving, watching TV, reading, cooking, preparing food, cleaning, washing, shopping (Tr. 19, 449, 21), and going on vacation (Tr. 110). Although Plaintiff now argues that these activities of daily living were attributable to her manic behavior, the record does not support such a broad assertion.

Nor does Plaintiff's work history alter the ALJ's credibility analysis. "A plaintiff with a good work history is entitled to substantial credibility when claiming inability to work." *Bradley v. Colvin*, 110 F. Supp. 3d 429, 447 (E.D.N.Y. 2015) (quoting another source). But, as the ALJ

discussed, Plaintiff's proffered impairments and the severity of those impairments did not comport

with the medical evidence in the record. Plus, while Plaintiff had a distant history of good earnings,

those earnings dropped precipitously nearly 10 years before she filed her claim.

     **E.**       **The ALJ Did Not Err in Failing to Develop the Record Regarding Plaintiff's Morton's Neuroma**

The ALJ has a duty to develop the medical record, especially in cases like this one, where

Plaintiff is proceeding *pro se*. The ALJ here noted at the November 2015 hearing that he would

seek notes from Plaintiff's treating podiatrist (Tr. 91), but Plaintiff argues the ALJ never did so.

ECF No. 12-1 at 28-29. However, at a subsequent hearing in August 26, the ALJ explained that

he had "kept the case open for a period of time to obtain [additional medical evidence] and we

now have those records." Tr. 95. The Court is not clear exactly what records are at issue, but it

appears the ALJ and Plaintiff believed that all of the records were in fact submitted. In any event,

even when an ALJ fails in his or her duty to request records, remand is not required where "the

record contains sufficient evidence from which an ALJ can asses the petitioner's residual

functional capacity." *Tanski v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013).

Here, although Plaintiff claims that her Morton's neuroma—a thickening of tissue around

a nerve in the foot—affects her ability to work, the medical evidence is quite clear that Plaintiff

has no attendant limitations. Plaintiff's gait was found to be normal on multiple occasions. Tr.

420, 426, 430, 433, 444, 448, 484, 516, 518, 524, 526-27, 532, 539-40, 543, 547, 549, 559, 561,

563, 582. And, consultative evaluator Donna Miller, D.O. opined that "the claimant had no

significant physical limitations." Tr. 446. On examination, she "appeared to be in no acute

distress," her gait was normal, she could walk on heels and toes without difficulty, and could

change and rise from the chair without help or difficulty. Tr. 444. These records were enough for

the ALJ to conclude that Plaintiff's Morton's neuroma did not significantly affect her ability to work, and any failure to develop the record was harmless error.

### F.      The RFC is Supported by Substantial Evidence

Finally, the ALJ's RFC is supported by substantial evidence.  As explained above, the RFC limiting Plaintiff to low stress work with no independent decision making, no complex instructions or tasks, no strict quotas, minimal changes in work routine, only occasional interaction with coworkers, and only incidental interaction with the general public comports with the treatment notes and testimony in the record.  The RFC also aligns with the opinion evidence, except for the opinion of Dr. Rodes, which was discounted for good reason.  Indeed, as described above, the RFC is *more* limiting than the opinion from Dr. Butensky.  It is also in line with the opinion from consultative evaluator Christine Ransom, Ph.D., who was given "some weight" and who concluded that Plaintiff would have moderate difficulty following and understanding simple tasks, maintaining attention, and maintaining a regular schedule.  Tr. 447-50.

### CONCLUSION

Plaintiff's motion for judgment on the pleadings (ECF No. 12) is DENIED, the Commissioner's motion for judgment on the pleadings (ECF No. 15) is GRANTED, and the ALJ's decision is AFFIRMED.  The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 14, 2020
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

10